Simon, J.
The plaintiff is appellant from a judgment in his favor, condemning the defendants to pay him, in solido, the sum of $420, in discharge of the claim set up in his petition. This judgment was rendered on the verdict of a jury, and after an ineffectual attempt to obtain a new trial. The plaintiff complains, that the jury did not give him a verdict for the whole amount of his demand, which, he contends, is sufficiently established by the evidence-
This action is brought on an account for fees and expenses amounting to $1157, alleged to be due to the plaintiff, as Sheriff of the parish of West Feliciana, for having kept about one year, eleven slaves, under a writ of sequestration issued in the case of Jordan v. H. Black, (14 La. 351,) and for clothing and medical attendance for the same. The account is accompanied by an order of the District Judge allowing the amount, and ordering it to be taxed as costs in the suit j and the defendants are sought to be made responsible for the amount .claimed, as having become securities for the costs.
*83 The defendants joined issue by first pleading a general denial of the plaintiff’s allegations. Admitting their liability as sureties, they averred, that it was plaintiff’s duty to have hired out the slaves, or to have employed them in sueh manner as to defray the expenses; and that the services of the slaves are well worth a sum sufficient to defray all their actual expenses, and even leave a balance in favor of the owner.
On the day of the trial, the defendants filed an amended answer, in which they set up a plea in compensation against the plaintiff’s demand.
The case presents a mere- question of fact. The evidence establishes, that the negroes charged for were the same that were sequestered in the suit of Jordan v. Black, on the 2d of May, 1840, and kept by the Sheriff, under the writ, until the 7th of May, 1841, when they were hired out, under an order of the court, for the sum of $50, all the expenses of the slaves to be paid by the person hiring them. The negroes were kept in jail, although one of the defendants had offered to take them, and to give a bond ; the Sheriff not thinking himself authorized to accept the offer. The plaintiff called for the negroes after they had been in jail some time, and said, that he wished to take them out, as it was too expensive to keep them in jail. Several witnesses were examined to prove the amount of compensation due the plaintiff for keeping the slaves. One said, that he would take about 30 cents per day each, for their keeping; and would not think $30 a year, a fair compensation for keeping a grown negro. He added, that the value of the foad furnished would be off set by the value of the services rendered by the slave. Another testified, that the expense of his negroes, taken all round, is not more than $25 per year, each. Another witness stated, that he would not charge more than a bit per head for weighing out the allowance of the negroes per week, and two bits per head for the meat per week; he would consider two bits per day unreasonable, as he boards white men at that, and makes money at it. Another said, that for keeping slaves as sheriff, he always charged two bits per day per head, which included clothing and feeding ; he always received that sum, and considered it a reasonable charge, and thinks the bill shown him (the account sued on) a reasonable one.
*84 According to art. 283 of the Code of Practice, the Sheriff, while he retains possession of sequestered property, is bound to take proper care of the same, and to administer it as a prudent father of a family would administer his own affairs ; and he will be entitled to receive a just compensation for his administration, to be determined by the court. Civ. Code, arts. 2949, 2950. In the case of the seizure of slaves, the Sheriff cannot hire them out, unless he be authorized expressly by the court, with the consent of both parties; (Code of Pract. art. 662 ;) and he is authorized to make such disbursements as are necessary for their preservation, and to put them in a place of safety. Ibid. arts. 659, 661. These last provisions may also-be considered as properly applicable to the keeping of property sequestered; and thus, it is clear, that the Sheriff is not bound to hire out the slaves sequestered, and to account for the value of their services, unless the parties have given their consent, and the court has made an order to that effect. We are, therefore, of opinion that the Sheriff is entitled in this case to a fair compensation.
But we think also, that the verdict of the jury fixing that compensation, though apparently very moderate, is not so manifestly erroneous as to require our interference. The evidence upon which it is based is somewhat uncertain and contradictory. The witnesses do not agree on the amount of the compensation to be allowed. The jury were the proper judges in such matters; and the Judge, a quo, who had originally approved the plaintiff’s account on which his claim is founded, expressed himself satisfied with the amount allowed, by refusing to grant a new trial. Under such circumstances, we do not feel ourselves authorized to say that the jury erred, and that the plaintiff should obtain any relief at our hands.
It is, therefore, ordered and decreed, that the judgment appealed from be affirmed, with costs in the inferior court; those in this court, to be paid by the plaintiff and appellant.